# EXHIBIT 1

Case 3:25-cv-00526-WWB-LLL Document 8 Filed 05/12/25 Page 2 of 15 PageID 149

IN THE CIRCUIT COURT, SEVENTH JUDICIAL CIRCUIT, IN AND FOR ST. JOHNS COUNTY, FLORIDA

CASE NO.:
DIVISION:

CHRISTOPHER PONTARELLI, an individual, and JAMIE PONTARELLI, an individual,

Plaintiffs,

vs.

FIRST AMERICAN TITLE INSURANCE COMPANY, a foreign corporation,

Defendant.
_______________________________________/

**COMPLAINT**

Plaintiffs, Christopher and Jamie Pontarelli (collectively, the "Owners"), by and through their undersigned counsel, sue Defendant, First American Title Insurance Company ("First American"), and allege:

**Parties, Jurisdiction, and Venue**

1. Owners are residents of Ponte Vedra Beach, St. Johns County, Florida.

2. First American is a Nebraska corporation authorized to and doing business in the state of Florida.

3. This Court, pursuant to § 26.012, Fla. Stat., has jurisdiction because this action seeks damages that exceed $50,000.00, exclusive of interest, costs, and attorneys' fees.

4. Venue is proper in St. Johns County, Florida, pursuant to § 47.011 and § 47.051, Fla. Stat., as the events or omissions giving rise to the claims occurred in and the property that is the subject of this action is situated in St. Johns County, Florida.

## General Allegations

5. In 2022, Owners entered into a written contract with Patrick and Angela Lyle (collectively, the "Sellers") whereby Owners paid to Sellers the sum of $2,100,000.00 for a General Warranty Deed conveying to Owners in fee simple, certain real property located in Ponte Vedra Beach, St. Johns County, Florida (the "Property"), commonly known as 411 A Roscoe Boulevard North, Ponte Vedra Beach, Florida 32082.

6. The General Warranty Deed states that the land is conveyed free of all encumbrances.

7. On August 1, 2022, First American executed and delivered to Owners a policy of title insurance, bearing Policy Number 5011412-1040533e (the "Title Policy").

8. Under the provisions of the Title Policy, First American agreed to insure title to the Property, in an amount not exceeding $2,100,000.00, against any defects in the title to the Property. A copy of the Title Policy is attached hereto as Exhibit "A" and incorporated herein by this reference.

9. Thereafter, Owners discovered that the Property is encumbered by an undisclosed perpetual easement (the "Easement") running the entire southern end of the Property. The Easement provides for pedestrian access, ingress and egress, to the Intracoastal Waterway for the owner of the parcel adjacent (the "Neighbor") to the Property.

**Breach of Title Policy**

10. The Title Policy does not exclude the Easement and, in fact, insures Owners' interest in the Property without any encumbrances, including the Easement.

11. In or about late 2022 and early 2023, Owners provided notice to First American of the defects in the title to the Property and demanded that First American cure same or compensate Owners for their damages.

12. First American has failed and refused to cure the defect or fairly compensate Owners for the damages resulting from the Easement under the Title Policy.

13. The Title Policy is a valid and enforceable contract.

14. By virtue of First American's failure to cure the defect or fairly compensate Owners, it has breached its obligations under the Title Policy, resulting in damages to Owners, including fees and costs incurred by Owners consequent to defending a lawsuit brought against them by the Neighbor to enforce the Easement.

15. All conditions precedent to this action have been performed, waived, or otherwise excused.

16. Owners have retained the undersigned law firm and are obligated to pay the firm a reasonable fee for its services.

17. Pursuant to Section 627.428, Fla. Stat., and the terms of the Title Policy, Owners are entitled to recover the attorneys' fees and costs incurred by her in the prosecution of this matter.

WHEREFORE, Plaintiffs, Christopher and Jamie Pontarelli, demand judgment against Defendant, First American Title Insurance Company for damages in an amount to be determined at trial, together with interest, costs, attorneys' fees and such other relief as this Court deems just and appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

DATED this 15th day of April, 2025.

MILAM HOWARD NICANDRI
& GILLAM, P.A.

By: ______________________

W. Braxton Gillam, IV
Florida Bar No.: 122076
Patrick W. Joyce
Florida Bar No. 85078
14 East Bay Street
Jacksonville, Florida 32202
Tel: (904) 357-3660
Fax: (904) 357-3661
Primary: bgillam@milamhoward.com
Secondary: sphipps@milamhoward.com
Primary: pjoyce@milamhoward.com
Secondary: pmaas@milamhoward.com
Secondary: hdurham@milamhoward.com

*Attorneys for Plaintiffs*

| First American Title™ | Owner's Policy of Title Insurance (with Florida modifications) |
|---|---|
| | ISSUED BY **First American Title Insurance Company** |
| **Owner's Policy** | POLICY NUMBER **5011412-1040533e** |

**Any notice of claim and any other notice or statement in writing required to be given to the Company under this policy must be given to the Company at the address shown in Section 18 of the Conditions.**

## COVERED RISKS

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS, **FIRST AMERICAN TITLE INSURANCE COMPANY**, a Nebraska corporation (the "Company") insures, as of Date of Policy against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:

1. Title being vested other than as stated in Schedule A.
2. Any defect in or lien or encumbrance on the Title. This Covered Risk includes but is not limited to insurance against loss from
   (a) A defect in the Title caused by
      (i) forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;
      (ii) failure of any person or Entity to have authorized a transfer or conveyance;
      (iii) a document affecting Title not properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;
      (iv) failure to perform those acts necessary to create a document by electronic means authorized by law;
      (v) a document executed under a falsified, expired, or otherwise invalid power of attorney;
      (vi) a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or
      (vii) a defective judicial or administrative proceeding.
   (b) The lien of real estate taxes or assessments imposed on the Title by a governmental authority due or payable, but unpaid.
   (c) Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land. The term "encroachment" includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.
3. Unmarketable Title.
4. No right of access to and from the Land.

**(Covered Risks Continued on Page 2)**

In Witness Whereof, First American Title Insurance Company has caused its corporate name to be hereunto affixed by its authorized officers as of Date of Policy shown in Schedule A.

***First American Title Insurance Company***

Kenneth D. DeGiorgio, President

Greg L. Smith, Secretary

For Reference:

**File #:** 22-1589
**Loan #:** 11142206664203
**Policy #:** 5011412-1040533e

Issued By:

**Ponte Vedra Title, LLC**
50 A1A North, Suite 108
Ponte Vedra Beach, FL 32082

(This Policy is valid only when Schedules A and B are attached)

**This jacket was created electronically and constitutes an original document**

**Copyright 2006-2009 American Land Title Association. All rights reserved.** The use of this form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



**EXHIBIT "A"**

5. The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (a) the occupancy, use, or enjoyment of the Land;
   (b) the character, dimensions, or location of any improvement erected on the Land;
   (c) the subdivision of land; or
   (d) environmental protection

   if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.
6. An enforcement action based on the exercise of a governmental police power not covered by Covered Risk 5 if a notice of the enforcement action, describing any part of the Land, is recorded in the Public Records, but only to the extent of the enforcement referred to in that notice.
7. The exercise of the rights of eminent domain if a notice of the exercise, describing any part of the Land, is recorded in the Public Records.
8. Any taking by a governmental body that has occurred and is binding on the rights of a purchaser for value without Knowledge.
9. Title being vested other than as stated in Schedule A or being defective
   (a) as a result of the avoidance in whole or in part, or from a court order providing an alternative remedy, of a transfer of all or any part of the title to or any interest in the Land occurring prior to the transaction vesting Title as shown in Schedule A because that prior transfer constituted a fraudulent or preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws; or
   (b) because the instrument of transfer vesting Title as shown in Schedule A constitutes a preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws by reason of the failure of its recording in the Public Records
      (i) to be timely, or
      (ii) to impart notice of its existence to a purchaser for value or to a judgment or lien creditor.
10. Any defect in or lien or encumbrance on the Title or other matter included in Covered Risks 1 through 9 that has been created or attached or has been filed or recorded in the Public Records subsequent to Date of Policy and prior to the recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The Company will also pay the costs, attorneys' fees, and expenses incurred in defense of any matter insured against by this Policy, but only to the extent provided in the Conditions.

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
      (i) the occupancy, use, or enjoyment of the Land;
      (ii) the character, dimensions, or location of any improvement erected on the Land;
      (iii) the subdivision of land; or
      (iv) environmental protection;

      or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed, or agreed to by the Insured Claimant;
   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   (c) resulting in no loss or damage to the Insured Claimant;
   (d) attaching or created subsequent to Date of Policy; or
   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.
4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
   (a) a fraudulent conveyance or fraudulent transfer; or
   (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.
5. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.



EXHIBIT "A"

Policy #: 5011412-1040533e

## CONDITIONS

1. **DEFINITION OF TERMS**

   The following terms when used in this policy mean:

   (a) "Amount of Insurance": The amount stated in Schedule A, as may be increased or decreased by endorsement to this policy, increased by Section 8(b), or decreased by Sections 10 and 11 of these Conditions.

   (b) "Date of Policy": The date designated as "Date of Policy" in Schedule A.

   (c) "Entity": A corporation, partnership, trust, limited liability company, or other similar legal entity.

   (d) "Insured": The Insured named in Schedule A.

      (i) The term "Insured" also includes

         (A) successors to the Title of the Insured by operation of law as distinguished from purchase, including heirs, devisees, survivors, personal representatives, or next of kin;

         (B) successors to an Insured by dissolution, merger, consolidation, distribution, or reorganization;

         (C) successors to an Insured by its conversion to another kind of Entity;

         (D) a grantee of an Insured under a deed delivered without payment of actual valuable consideration conveying the Title

            (1) if the stock, shares, memberships, or other equity interests of the grantee are wholly-owned by the named Insured,

            (2) if the grantee wholly owns the named Insured,

            (3) if the grantee is wholly-owned by an affiliated Entity of the named Insured, provided the affiliated Entity and the named Insured are both wholly-owned by the same person or Entity, or

            (4) if the grantee is a trustee or beneficiary of a trust created by a written instrument established by the Insured named in Schedule A for estate planning purposes.

      (ii) With regard to (A), (B), (C), and (D) reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor Insured.

   (e) "Insured Claimant": An Insured claiming loss or damage.

   (f) "Knowledge" or "Known": Actual knowledge, not constructive knowledge or notice that may be imputed to an Insured by reason of the Public Records or any other records that impart constructive notice of matters affecting the Title.

   (g) "Land": The land described in Schedule A, and affixed improvements that by law constitute real property. The term "Land" does not include any property beyond the lines of the area described in Schedule A, nor any right, title, interest, estate, or easement in abutting streets, roads, avenues, alleys, lanes, ways, or waterways, but this does not modify or limit the extent that a right of access to and from the Land is insured by this policy.

   (h) "Mortgage": Mortgage, deed of trust, trust deed, or other security instrument, including one evidenced by electronic means authorized by law.

   (i) "Public Records": Records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge. With respect to Covered Risk 5(d), "Public Records" shall also include environmental protection liens filed in the records of the clerk of the United States District Court for the district where the Land is located.

   (j) "Title": The estate or interest described in Schedule A.

   (k) "Unmarketable Title": Title affected by an alleged or apparent matter that would permit a prospective purchaser or lessee of the Title or lender on the Title to be released from the obligation to purchase, lease, or lend if there is a contractual condition requiring the delivery of marketable title.

2. **CONTINUATION OF INSURANCE**

   The coverage of this policy shall continue in force as of Date of Policy in favor of an Insured, but only so long as the Insured retains an estate or interest in the Land, or holds an obligation secured by a purchase money Mortgage given by a purchaser from the Insured, or only so long as the Insured shall have liability by reason of warranties in any transfer or conveyance of the Title. This policy shall not continue in force in favor of any purchaser from the Insured of either (i) an estate or interest in the Land, or (ii) an obligation secured by a purchase money Mortgage given to the Insured.

3. **NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT**

   The Insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 5(a) of these Conditions, (ii) in case Knowledge shall come to an Insured hereunder of any claim of title or interest that is adverse to the Title, as insured, and that might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if the Title, as insured, is rejected as Unmarketable Title. If the Company is prejudiced by the failure of the Insured Claimant to provide prompt notice, the Company's liability to the Insured Claimant under the policy shall be reduced to the extent of the prejudice.

4. **PROOF OF LOSS**

   In the event the Company is unable to determine the amount of loss or damage, the Company may, at its option, require as a condition of payment that the Insured Claimant furnish a signed proof of loss. The proof of loss must describe the defect, lien, encumbrance, or other matter insured against by this policy that constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage.

5. **DEFENSE AND PROSECUTION OF ACTIONS**

   (a) Upon written request by the Insured, and subject to the options contained in Section 7 of these Conditions, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured. This obligation is limited to only those stated causes of action alleging matters insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the Insured to object for reasonable cause) to represent the Insured as to those stated causes of action. It shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs, or expenses incurred by the Insured in the defense of those causes of action that allege matters not insured against by this policy.



EXHIBIT "A"

(b) The Company shall have the right, in addition to the options contained in Section 7 of these Conditions, at its own cost, to institute and prosecute any action or proceeding or to do any other act that in its opinion may be necessary or desirable to establish the Title, as insured, or to prevent or reduce loss or damage to the Insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable to the Insured. The exercise of these rights shall not be an admission of liability or waiver of any provision of this policy. If the Company exercises its rights under this subsection, it must do so diligently.

(c) Whenever the Company brings an action or asserts a defense as required or permitted by this policy, the Company may pursue the litigation to a final determination by a court of competent jurisdiction, and it expressly reserves the right, in its sole discretion, to appeal any adverse judgment or order.

**6. DUTY OF INSURED CLAIMANT TO COOPERATE**

(a) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding and any appeals, the Insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, including the right to use, at its option, the name of the Insured for this purpose. Whenever requested by the Company, the Insured, at the Company's expense, shall give the Company all reasonable aid (i) in securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act that in the opinion of the Company may be necessary or desirable to establish the Title or any other matter as insured. If the Company is prejudiced by the failure of the Insured to furnish the required cooperation, the Company's obligations to the Insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

(b) The Company may reasonably require the Insured Claimant to submit to examination under oath by any authorized representative of the Company and to produce for examination, inspection, and copying, at such reasonable times and places as may be designated by the authorized representative of the Company, all records, in whatever medium maintained, including books, ledgers, checks, memoranda, correspondence, reports, e-mails, disks, tapes, and videos whether bearing a date before or after Date of Policy, that reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Insured Claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect, and copy all of these records in the custody or control of a third party that reasonably pertain to the loss or damage. All information designated as confidential by the Insured Claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the Insured Claimant to submit for examination under oath, produce any reasonably requested information, or grant permission to secure reasonably necessary information from third parties as required in this subsection, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

**7. OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY**

In case of a claim under this policy, the Company shall have the following additional options:

(a) To Pay or Tender Payment of the Amount of Insurance.

To pay or tender payment of the Amount of Insurance under this policy together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay.

Upon the exercise by the Company of this option, all liability and obligations of the Company to the Insured under this policy, other than to make the payment required in this subsection, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

(b) To Pay or Otherwise Settle With Parties Other Than the Insured or With the Insured Claimant.

(i) To pay or otherwise settle with other parties for or in the name of an Insured Claimant any claim insured against under this policy. In addition, the Company will pay any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay; or

(ii) To pay or otherwise settle with the Insured Claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in subsections (b)(i) or (ii), the Company's obligations to the Insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

**8. DETERMINATION AND EXTENT OF LIABILITY**

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy.

(a) The extent of liability of the Company for loss or damage under this policy shall not exceed the lesser of

(i) the Amount of Insurance; or

(ii) the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy.

(b) If the Company pursues its rights under Section 5 of these Conditions and is unsuccessful in establishing the Title, as insured,

(i) the Amount of Insurance shall be increased by 10%, and

(ii) the Insured Claimant shall have the right to have the loss or damage determined either as of the date the claim was made by the Insured Claimant or as of the date it is settled and paid.

(c) In addition to the extent of liability under (a) and (b), the Company will also pay those costs, attorneys' fees, and expenses incurred in accordance with Sections 5 and 7 of these Conditions.



**EXHIBIT "A"**

**9. LIMITATION OF LIABILITY**

(a) If the Company establishes the Title, or removes the alleged defect, lien, or encumbrance, or cures the lack of a right of access to or from the Land, or cures the claim of Unmarketable Title, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured.

(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals, adverse to the Title, as insured.

(c) The Company shall not be liable for loss or damage to the Insured for liability voluntarily assumed by the Insured in settling any claim or suit without the prior written consent of the Company.

**10. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY**

All payments under this policy, except payments made for costs, attorneys' fees, and expenses, shall reduce the Amount of Insurance by the amount of the payment.

**11. LIABILITY NONCUMULATIVE**

The Amount of Insurance shall be reduced by any amount the Company pays under any policy insuring a Mortgage to which exception is taken in Schedule B or to which the Insured has agreed, assumed, or taken subject, or which is executed by an Insured after Date of Policy and which is a charge or lien on the Title, and the amount so paid shall be deemed a payment to the Insured under this policy.

**12. PAYMENT OF LOSS**

When liability and the extent of loss or damage have been definitely fixed in accordance with these Conditions, the payment shall be made within 30 days.

**13. RIGHTS OF RECOVERY UPON PAYMENT OR SETTLEMENT**

(a) Whenever the Company shall have settled and paid a claim under this policy, it shall be subrogated and entitled to the rights of the Insured Claimant in the Title and all other rights and remedies in respect to the claim that the Insured Claimant has against any person or property, to the extent of the amount of any loss, costs, attorneys' fees, and expenses paid by the Company. If requested by the Company, the Insured Claimant shall execute documents to evidence the transfer to the Company of these rights and remedies. The Insured Claimant shall permit the Company to sue, compromise, or settle in the name of the Insured Claimant and to use the name of the Insured Claimant in any transaction or litigation involving these rights and remedies.

If a payment on account of a claim does not fully cover the loss of the Insured Claimant, the Company shall defer the exercise of its right to recover until after the Insured Claimant shall have recovered its loss.

(b) The Company's right of subrogation includes the rights of the Insured to indemnities, guaranties, other policies of insurance, or bonds, notwithstanding any terms or conditions contained in those instruments that address subrogation rights.

**14. ARBITRATION**

Unless prohibited by applicable law, arbitration pursuant to the Title Insurance Arbitration Rules of the American Arbitration Association may be demanded if agreed to by both the Company and the Insured at the time of a controversy or claim. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Insured arising out of or relating to this policy, and service of the Company in connection with its issuance or the breach of a policy provision or other obligation. Arbitration pursuant to this policy and under the Rules in effect on the date the demand for arbitration is made, or, at the option of the Insured, the Rules in effect at Date of Policy shall be binding upon the parties. The award may include attorneys' fees only if the laws of the state in which the Land is located permit a court to award attorneys' fees to a prevailing party. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.

The law of the situs of the land shall apply to an arbitration under the Title Insurance Arbitration Rules.

A copy of the Rules may be obtained from the Company upon request.

**15. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT**

(a) This policy together with all endorsements, if any, attached to it by the Company is the entire policy and contract between the Insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage that arises out of the status of the Title or by any action asserting such claim whether or not based on negligence shall be restricted to this policy.

(c) Any amendment of or endorsement to this policy must be in writing and authenticated by an authorized person, or expressly incorporated by Schedule A of this policy.

(d) Each endorsement to this policy issued at any time is made a part of this policy and is subject to all of its terms and provisions. Except as the endorsement expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsement, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.

**16. SEVERABILITY**

In the event any provision of this policy, in whole or in part, is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision or such part held to be invalid, but all other provisions shall remain in full force and effect.

**17. CHOICE OF LAW; FORUM**

(a) Choice of Law: The Insured acknowledges the Company has underwritten the risks covered by this policy and determined the premium charged therefor in reliance upon the law affecting interests in real property and applicable to the interpretation, rights, remedies, or enforcement of policies of title insurance of the jurisdiction where the Land is located.

Therefore, the court or an arbitrator shall apply the law of the jurisdiction where the Land is located to determine the validity of claims against the Title that are adverse to the Insured and to interpret and enforce the terms of this policy. In neither case shall the court or arbitrator apply its conflicts of law principles to determine the applicable law.

(b) Choice of Forum: Any litigation or other proceeding brought by the Insured against the Company must be filed only in a state or federal court within the United States of America or its territories having appropriate jurisdiction.

**18. NOTICES, WHERE SENT**

Any notice of claim and any other notice or statement in writing required to be given to the Company under this policy must be given to the Company at **First American Title Insurance Company, Attn: Claims National Intake Center, 1 First American Way, Santa Ana, California 92707. Phone: 888-632-1642**

| First American Title™ | Owner's Policy of Title Insurance<br>ISSUED BY<br>**First American Title Insurance Company** |
|---|---|
| **Schedule A** | POLICY NUMBER<br>**5011412-1040533e** |

Name and Address of Title Insurance Company:
**First American Title Insurance Company, 1 First American Way, Santa Ana, CA 92707**

File No.: 22-1589

Address Reference: 411A Roscoe Boulevard North, Ponte Vedra Beach, FL 32082

Amount of Insurance: $2,100,000.00 Premium: $7,825.00

Date of Policy: August 1, 2022 at 8:00 AM or recording date of the insured instrument, whichever is later

1. Name of Insured:
   Christopher Pontarelli & Jamie Pontarelli

2. The estate or interest in the Land that is insured by this policy is:
   Fee Simple

3. Title is vested in:
   Christopher Pontarelli and Jamie Pontarelli, husband and wife

4. The Land referred to in this policy is described as follows:
   Property description set forth in Exhibit "A", attached hereto and made a part hereof.

By: ______________________
Authorized Countersignature
Ponte Vedra Title, LLC, License #: D065763
Heather M. Reynolds Esq., License #: 0629911
(This Schedule A valid only when Schedule B is attached)



**EXHIBIT "A"**

| First American Title™ | Owner's Policy of Title Insurance<br>ISSUED BY<br>**First American Title Insurance Company** |
|---|---|
| **Schedule B** | POLICY NUMBER<br>**5011412-1040533e** |

Owners Policy No.: 5011412-1040533e
Loan Policy No.: 5011312-0876203e
Agent File No.: 22-1589

**EXCEPTIONS FROM COVERAGE**

This policy does not insure against loss or damage (and the Company will not pay costs, attorney's fees or expenses) that arise by reason of:

1. Any minerals or mineral rights leased, granted or retained by current or prior owners.

2. Taxes and assessments for the year 2022 and subsequent years, which are not yet due and payable.

3. Restrictions, dedications, conditions, reservations, easements and other matters shown on the plat of BIG CYPRESS SUBDIVISION, as recorded in Plat Book 5, Page(s) 74, but deleting any covenant, condition or restriction indicating a preference, limitation or discrimination based on race, color, religion, sex, handicap, familial status or national origin to the extent such covenants, conditions or restrictions violate 42 USC 3604(c).

4. Declaration of Covenants, Conditions, Restrictions and Easements, recorded in Deed Book 143, Page 458 , but deleting any covenant, condition or restriction indicating a preference, limitation or discrimination based on race, color, religion, sex, handicap, familial status or national origin to the extent such covenants, conditions or restrictions violate 42 USC 3604(c).

5. Terms and conditions of the easement(s) as set forth in Warranty Deed recorded in Book 874, Page 888.

6. Riparian and/or littoral rights are not insured.

7. The right, title or interest, if any, of the public to use as a public beach or recreation area any part of the Land lying between the water abutting the Land and the most inland of any of the following: (a) the natural line of vegetation; (b) the most extreme high water mark; (c) the bulkhead line, or (d) any other line which has been or which hereafter may be legally established as relating to such public use.

8. Rights of the United States Government to that part of the Land, if any, being artificially filled in land in what was formerly navigable waters arising by reason of the United States Government control over navigable waters in the interest of navigation and commerce.

9. Any adverse ownership claim by the State of Florida by right of sovereignty to any part of the Land that is, as of the Date of Policy or was at any time previously, under water (submerged).

10. Any rights, easements, interests or claims that may exist by reason of, or be reflected by, the following facts shown on the survey dated January 31, 2020 by Boatwright Land Surveyors, Inc.
    1. Fence encroachment over Northerly property line and into 10 foot Easement for Pedestrian Ingress and Egress on Southerly side.
    2. Exception for any matters relating to the bulkhead and wood deck located on, or adjacent to, the property.



**EXHIBIT "A"**

Note: All of the recording information contained herein refers to the Public Records of ST. JOHNS County, Florida, unless otherwise indicated. Any reference herein to a Book and Page or Instrument Number is a reference to the Official Record Books of said county, unless indicated to the contrary.

11. A Mortgage from Christopher Pontarelli and Jamie Pontarelli, husband and wife to Bank of England dated August 1, 2022 in the original principal amount of $1,000,000.00 and to be recorded in the Public Records of St. Johns County, Florida.

By: ______________________________
Authorized Countersignature



EXHIBIT "A"

| First American Title™ | Owner's Policy of Title Insurance |
|---|---|
| | ISSUED BY<br>**First American Title Insurance Company** |
| **Exhibit A** | POLICY NUMBER<br>**5011412-1040533e** |

Agent File No.: 22-1589
Owners Policy No.: 5011412-1040533e
Loan Policy No.: 5011312-0876203e

The Land referred to herein below is situated in the County of St. Johns, State of Florida, and is described as follows:

The West 275 feet of Lot 24, BIG CYPRESS SUBDIVISION, according to the Plat thereof recorded at Map Book 5, Page 74, in the Public Records of St. Johns County, Florida.
Together with a non-exclusive easement for ingress and egress over and across the Southerly 30 feet of the Easterly 125 feet of said lot 24.



**EXHIBIT "A"**